IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PANDORIA SHIRD, on behalf of herself and all similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>DUKE ENERGY CORPORATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 22-999-CFC-CJB<br>)<br>)<br>)<br>) |

## UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff Pandoria Shird (the "Named Plaintiff"), individually and on behalf of the 351 opt-ins who worked in North Carolina[1] and joined this action by filing consents to join (together with the Named Plaintiff, the "Plaintiffs" or the "Collective Members"), without opposition by Defendant Duke Energy Corporation ("Defendant"), files this Unopposed Motion for Settlement Approval and requests that the Court approve the Parties' Settlement Agreement and Release (the "Settlement Agreement"),[2] and dismiss this action with prejudice.

The Settlement Agreement encompasses the claims of a collective class consisting of 351 Collective Members who worked for Defendant or its vendors (who assigned workers to provide services to Defendant) as Call Center Specialists ("CCSs")[3] during the relevant time period. The

---

[1] Defendant discovered that two opt-ins worked in South Carolina rather than North Carolina, but agreed to include them in the settlement, despite them being outside the collective.

[2] The Settlement Agreement is attached as Exhibit 1.

[3] "Call Center Specialists" are defined as those Duke Energy employees working in the following job titles: Assoc Cust Care Spec Bilingual, Assoc Cust Care Specialist, Business Services Spec I, Business Services Spec I Bilingual, Business Services Spec II, Business Services Spec II Bilingual, Customer Care Spec Bilingual, Customer Care Specialist, Senior Cust Care Specialist, Senior Cust Care Spec Bilingual, and Temp Cust Care Associate.

1

Parties have agreed, subject to Court approval, to resolve this wage and hour matter for appropriate monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after investigation, informal discovery, document and data exchanges and contested litigation, and was the result of arm's length negotiations led by an experienced mediator and counsel well versed in wage and hour law. Accordingly, the Parties request that the Court: (1) approve as fair, adequate and reasonable the settlement set forth in the Settlement Agreement, including the method for distribution(s) to Plaintiffs, the payment of Service/General Release Payments, and Plaintiffs' Counsel's request for attorneys' fees and costs; and (2) dismiss the lawsuit with prejudice.[4]

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Lawsuit

Defendant is an American electric power and natural gas holding company incorporated in Delaware and headquartered in Charlotte, North Carolina. Plaintiffs were employed as CCSs at Defendant's call centers in North Carolina (or remotely but assigned to provide services to such centers). CCSs are responsible for customer service, including assisting customers with electrical outages and scheduling repairs, resolving issues, and handling inquiries.

Plaintiffs claim they were denied overtime pay under the FLSA for work performed over 40 hours in a workweek. D.I.s 1, 6. Plaintiffs allege that they performed compensable work prior to clocking-in without compensation. *Id*. Specifically, Plaintiffs allege that they would arrive at work prior to their scheduled shift to turn on computers, allow time for the computer to boot, log into the VPN (virtual private network), open various software applications, including Microsoft Teams, Outlook, Avaya, Dayforce, Cisco, CBIS, and SAP and Duke Energy's timekeeping

---

[4] *See* n. 1.

#

program called My Time, and then would clock-in as close to their scheduled shift start time as possible. Plaintiffs also allege that after opening the various applications they would place their phones in "ready" mode, at which point they must be ready to immediately take calls.

While Plaintiffs wholly disagree, Defendant contends that (i) it is not liable because it did not maintain a common, company-wide policy of not paying CCSs for time allegedly spent at the beginning of their shift booting up their computers and logging in to applications; (ii) its only common policy requires all working time to be reported; (iii) some Plaintiffs failed to accurately record their hours worked if their allegations are true, and further that (iv) Defendant had no knowledge of the allegedly unpaid overtime hours and could not have learned of such hours through reasonable diligence. D.I. 21. In addition, Defendant contends (whereas Plaintiffs disagree entirely on this point) that the action is not appropriate for final collective or class treatment because resolving each Plaintiff's claims will require individualized inquiries and therefore the collective is subject to decertification. *Id*.

### B.     Procedural History

Following an in-depth investigation into the claims that began in March 2022 and following pre-suit efforts, on July 29, 2022, Named Plaintiff filed the Complaint, asserting claims under the FLSA and North Carolina law alleging that Defendant failed to pay overtime, minimum wage, and all wages due. On August 12, 2022, she filed the Amended Complaint. D.I.s 1, 6. On September 26, 2022, Defendant filed its Answer. D.I. 21.

Plaintiff also filed a Motion for Conditional Certification. D.I.s 9, 10. Shortly thereafter, Defendant filed a Motion to Transfer Case to the Western District of North Carolina, where Defendant is headquartered. D.I.s 17, 18. The Parties negotiated a stipulation whereby they stipulated to conditional certification and notice, with Defendant reserving all arguments/rights as to the merits, decertification, and class certification challenges. The Parties also stipulated that the

case may be transferred to the Western District of North Carolina under certain conditions. On October 26, 2022, the Court endorsed the Parties' stipulation. D.I. 34. The Parties filed a separate stipulation regarding transfer, pursuant to which the case remains before this Court pending settlement approval. D.I.s 47, 48.

The Court-authorized notice was issued and 351 CCSs from North Carolina joined the conditionally certified collective by filing consents to join. Palitz Decl.,[5] ¶ 9.

In an effort to further explore a possible resolution of the case, the Parties scheduled mediation for April 5, 2023, before Honorable Thomas J. Rueter (Ret.), a respected retired magistrate judge from the Eastern District of Pennsylvania who frequently mediates complex wage/hour matters. *Id.*, ¶¶ 10-13. In anticipation of the mediation, Defendant produced a sample of VPN and AVAYA data that includes time stamps, phone records, and time records for the Named Plaintiff and a sample group of opt-ins. *Id.*, ¶ 11. Plaintiffs' counsel analyzed and extrapolated this data, along with data and information provided by Plaintiffs. *Id*. Plaintiffs' counsel provided a detailed mediation statement and analysis of damages, and the Parties further engaged in discussions leading up to the mediation about the merits of Plaintiffs' claims and Defendant's defenses. *Id.*, ¶ 12.

After a full-day mediation, the Parties reached a settlement on behalf of the Plaintiffs. *Id.*, ¶ 14. The Parties then separately negotiated the amount of attorneys' fees and costs to be paid to Plaintiffs' counsel per 29 U.S.C. § 216(b). *Id*.

    **C.**    **The Settlement**

On April 18, 2023, the Parties notified the Court that they had reached a settlement and would file a motion for settlement approval. D.I. 50. The Parties continued to discuss and

---

[5] The Declaration of Michael J. Palitz ("Palitz Decl.") is attached as Exhibit 2.

#

negotiate the language in the Settlement Agreement through May 17, 2023; and on May 18, 2023, the Settlement Agreement was fully executed by the Parties. Palitz Decl. at ¶ 15.

II.  **SUMMARY OF THE KEY SETTLEMENT TERMS**

The key terms of the settlement are set forth below. A complete description of the terms and conditions of the settlement is set forth in the Settlement Agreement.

    A.  **The Collective Class**

The individuals eligible to participate in the settlement include the 351 Plaintiffs who have joined this action by filing consents to join.

    B.  **Monetary Terms**

Pursuant to the Settlement Agreement, the settlement is structured as follows:

i.    Settlement Amounts for Plaintiffs shall be based on the Settlement Payment Allocation Plan and will equal $100,336.00. Ex. 1, Settlement Agreement, ¶ III. The Settlement Amounts for Plaintiffs does not include Defendant's share of payroll taxes on the wage portion of the Settlement Agreement, which will be paid by Defendant in addition to the Settlement Amount for Plaintiffs. *Id*. The amount of Settlement Amounts to Plaintiffs shall be divided equally into half W-2 wages for backpay claims and half 1099-MISC other income for liquidated damage claims. *Id*.

ii.    With Court approval, Named Plaintiff shall receive $4,000.00 and Opt-in Plaintiffs Jasmine Berdeguez, Kierrah Giles, Chandler Prisk, Giovanni Robinson, Brittany Reed, Kiara Sullivan, Ashley Turientine, Kyishawn Kitt, and Angionette Ricketts shall receive $500.00 each as Service/General Release Payments for their time spent and contribution in litigating the action in addition to the Settlement Amounts for Plaintiffs. Service/General Release Payments shall receive a 1099-

MISC for this payment. *Id*. In addition, the Service/General Release Payments represent consideration for the recipients' execution of a general release. *Id*. Failure to obtain approval of the amount for Service/General Release Plaintiffs will not effect other provisions of this Settlement Agreement and will not effect approval of the Settlement or terminate this Settlement Agreement. Amounts not awarded will be distributed *pro rata* as additional Settlement Amounts for Plaintiffs under the Settlement Payment Allocation Plan. *Id*.

iii. Plaintiffs' Counsel shall receive $151,164.00 in fees and costs which were separately negotiated apart from the Settlement Amounts for Plaintiffs.[6] *Id*.

**C. Settlement Distribution**

Within 10 days of the Court's Order granting this Motion, Defendant will deliver contact information regarding the Plaintiffs to the Settlement Administrator. *Id*., §IV.B. Within 35 days of the Court's Order granting this Motion, Defendant will deliver payment of $260,000.00 to the Settlement Administrator to be distributed pursuant to the Settlement Agreement and this Court's Approval Order. *Id*., §III. Within 40 days of the Court's Order granting this Motion, the Settlement Administrator will mail the Plaintiffs' settlement checks via First-Class USPS Mail along with the Notice of Settlement. *Id*. § IV.B. Plaintiffs shall have 120 days to cash checks. *Id*. After 120 days, the Settlement Amount to Plaintiffs and Service/General Release checks will be void and the unclaimed amounts will be paid to a non-profit entity selected by the Defendant. *Id*.

**D. Limited Release of Wage Claims**

The Settlement Agreement does not include a general waiver and release of claims for individuals other than those who will agree to a Service/General Release Payment. Upon approval

---

[6] The costs incurred by Plaintiffs' counsel includes the costs of Settlement Administration.

6

#

of Settlement, Plaintiffs only will waive and release every known or unknown claim, action, lawsuit or cause of action, asserted or unasserted, that Plaintiffs may have against Defendant relating in any respect to any employment-related wage and hour or wage payment type of claim alleged in the lawsuit or that could have been alleged in the lawsuit, including any FLSA claims, claims for breach of contract, and wage and hour and wage payment claims under federal, state or local law. *Id*. at § V.

### III. THE COURT SHOULD APPROVE THE SETTLEMENT

#### A. One-Step Approval is Authorized Here.

Unlike class action settlements under Federal Rule of Civil Procedure 23, courts have held that a "one-step settlement approval process is appropriate in FLSA Collective Actions." *Gallant v. Arrow Consultation Services, Inc.*, 2020 WL 2113399, at *2 (S.D. Ind. May 4, 2020) (*citing Knox v. Grp*, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017)); *Reynolds v. Fid. Invs. Institutional Operations Co., Inc.*, 2020 U.S. Dist. LEXIS 2710, at *11-12 (M.D.N.C. Jan. 8, 2020) ("Under the FLSA, a party's failure to opt into a collective action does not prevent them from bringing their own suits at a later date. FLSA collective actions thus do not implicate the same due process concerns as Rule 23 actions. . .. Approval of FLSA collective action settlements 'generally involves less stringent standards than Rule 23 class settlements.'"); *Carr v. Bob Evans Farms, Inc.*, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018) ("To approve an FLSA collective action settlement, a district court need only engage in a one-step process."); *Briggs v. PNC Financial Services Group, Inc.*, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same); *Faile v. Lancaster County*, 2012 U.S. Dist. LEXIS 189610, at *11 (D.S.C. Mar. 8, 2012) ("Approval of settlements in collective actions under the FLSA generally involves less stringent standards than Rule 23 class settlements . . . [because] 'an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement'") (citations omitted).

7

\#

Because employees must affirmatively opt-in to an FLSA settlement, the due process concerns present in class action settlements are not present in FLSA settlements because absent class members are not bound by the case's outcome and thus do not require the same judicial scrutiny. *Hager v. Omnicare, Inc.*, 2021 U.S. Dist. LEXIS 219456, at *12, n.2 (S.D.W.V. Nov. 15, 2021) ("Because the failure to opt in to an FLSA lawsuit does not prevent potential members of the collective from bringing their own suits in the future, FLSA collective actions do not implicate the same due process concerns as do Rule 23 actions.") (citations omitted). Thus, unlike settlements under Rule 23, FLSA settlements are not required to be subject to a two-stage process of preliminary approval followed by final approval, with the opportunity to object/opt-out, and no final fairness hearing is required. *Id*. ("The standard for settlement approval under the FLSA is much less rigorous than the standard under Fed. R. Civ. P. 23, because Rule 23 settlements extinguish the claims of non-participating class members. . .. A one-step settlement approval process in FLSA collective actions is appropriate.") (citations omitted); *see also O'Connor v. Oakhurst Dairy*, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."); *Carr*, 2018 WL 7508650, at *2 ("Because failure to opt in does not bar potential collective action members from bringing their own suits, FLSA collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23."); *see generally Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (citation omitted)). In this case, the opt-ins filed consent to join forms agreeing to be bound by a Settlement recommended by their counsel

and be bound by any decision of the Court, favorable or unfavorable, so no further consent from the Plaintiffs is needed.

### B. Standard for FLSA Settlement Approval

Third Circuit courts review FLSA settlements pursuant to the standards outlined in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014). A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *Id.* at *2 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Bettger v. Crossmark, Inc.*, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015). If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

If a court determines that the parties are indeed settling a *bona fide* dispute, the Court conducts a "two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employees, and (2) the settlement furthers the FLSA's implementation in the workplace." *Tumpa v. IOC-PA, LLC*, 2021 WL 62144, at *5 (W.D. Pa. Jan. 7, 2011). To determine whether an FLSA settlement is fair and reasonable, district courts within the Third Circuit have utilized the same factors applied to Rule 23 class action settlements. Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the [collective] action through the trial; (7) the ability of the defendant[] to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9)

9

#

> the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (ellipses and citations omitted) (the "*Girsh* factors"). At the same time, district courts in the Third Circuit have also noted that the *Girsh* factors need not be strictly applied in the context of collective action settlements. *See Bellan v. Capital Blue Cross*, 2022 WL 736441, at *4 (M.D. Pa. Mar. 10, 2022) ("While the *Girsh* factors are a helpful framework, their 'rigid application' is not necessary in the FLSA collective action context."); *Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019) (same). As discussed below, the settlement should be approved because it resolves a bona fide dispute, represents a fair and reasonable resolution of that dispute consistent with the *Girsh* factors, and does not frustrate the goals of the FLSA.

### C. The Settlement is Fair, Reasonable, and Adequate

Application of the *Girsh* factors demonstrates the settlement is fair and reasonable. *First*, the complexity of the case and the likely continued duration of the litigation supports settlement approval. Specifically, absent settlement, the Parties would continue litigating nearly every aspect of Plaintiffs' claims, including, but not limited to: (1) whether the collective class is similarly situated and whether it should be decertified; (2) whether, upon motion from Plaintiffs, a Rule 23 motion should be granted and/or subclasses created; (3) whether or to what extent Plaintiffs performed work off-the-clock for which they were denied overtime pay; (4) whether Defendant knew or should have known of Plaintiffs' alleged of-the-clock work; (5) whether any off-the-clock work was de minimis; (6) whether the alleged unpaid work tasks were compensable; (7) the likelihood of success on the merits; and (8) the proper damages calculations and whether they can be determined on a class-wide basis. Thus, absent settlement, this matter has the potential to

#

continue proceeding for years as the Parties and Court work through complex class issues, legal questions, and determinations of fact.

*Second*, the stage of proceedings completed weighs in favor of approval. As set forth above, the Parties exchanged informal discovery in preparation for mediation. The Parties also litigated issues related to Plaintiffs' motion for conditional certification, Defendant's motion to transfer, and reached several stipulations regarding the claims that should proceed in this case. Also, if a settlement were not reached the Parties would soon embark on expensive formal discovery.

*Third*, settlement is appropriate because a trial on the merits would involve significant risks to Plaintiffs as to liability and damages. Defendant denies Plaintiffs' claims that they worked off-the-clock and are due overtime compensation. If the Court or a jury agreed with Defendant, Plaintiffs' FLSA claims will fail as a matter of law and they will recover nothing. Thus, a trial on the merits presents a substantial risk to Plaintiffs.

*Fourth*, there is a risk that Plaintiffs would not succeed in maintaining the conditionally certified collective. Where final certification has not yet occurred, this factor "tips in favor of approving the settlement." *Tumpa*, 2021 WL 62144, at *9. Here, Defendant undoubtedly would move for decertification of the collective once discovery was complete and argue that Plaintiffs are not similarly situated due to various alleged differences among members of the FLSA collective. Plaintiffs disagree, but there is a risk of decertification should this litigation continue.

*Fifth*, Plaintiffs' Settlement Amount represents a meaningful recovery and is reasonable, especially in light of Plaintiffs' litigation risks. "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323–24 (3d

#

Cir. 2011) (quoting *In re Prudential*, 148 F.3d at 322). The fact that a settlement represents an amount short of the best possible recovery for Plaintiffs does not render it unreasonable or inadequate. *See In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). "[W]here calculating the best possible recovery for the plaintiffs is exceedingly speculative, the reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Rossini*, 2020 WL 3481458 at *16 (citing *Kapolka*, 2019 WL 5394751, at *6). Here, the Settlement Agreement provides for a $100,336.00 recovery for Plaintiffs' underlying unpaid wage claim, concerning the approximate time spent booting up computers and opening applications prior to clocking in. Palitz Decl., ¶ 16. Defendant vigorously denied the claims and maintained that Plaintiffs were paid for all time worked. This settlement amount represents a recovery of roughly all of the backpay damages that Plaintiffs could reasonably except to achieve at trial if they prevailed on all their claims. *Id*.

The 351 Plaintiffs will receive an award ranging from $1,134,84 to a minimum payment of $50.00 with an average payment amount of $290.83. *Id*. ¶ 17. The settlement is allocated fairly to the Plaintiffs on a *pro rata* basis which is based upon the total number of weeks they worked in the settlement period. *Id*., ¶ 18. Considering the risk faced by Plaintiffs if litigation continues — including decertification, a lower recovery, or no recovery at all — the Settlement provides a excellent recovery for the Plaintiffs. *Id*., ¶ 24. In addition to, and consistent with, the above, "the reaction of the class to the settlement" (i.e., the second *Girsh* factor) supports approval. Indeed, the Named Plaintiff on behalf of the collective executed the Settlement Agreement. *See* Ex. 1.

#

In addition, the settlement does not frustrate the implementation of the FLSA because the release and publicity provisions in the Settlement Agreement are properly limited. First, the release for the Plaintiffs is sufficiently tailored to the employment-related wage-hour claims that were or could have been asserted in the litigation. *Kutz v. Cargill Cocoa & Chocolate, Inc.*, 2019 WL 5457776, at *8 (M.D. Penn. Oct. 23, 2019) (approving release "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in the lawsuit"); *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *7 (D.N.J. Sept. 30, 2019) (approving proposed release in collective action that was limited to claims asserted by and on behalf of the plaintiff under FLSA and NJWHL, i.e., those related to the specific litigation); *Singleton,* 2014 U.S. Dist. LEXIS 108427 at *24 (approving release limited to claims related to the specific litigation and not incorporating any state or FLSA wage and hour claims that a plaintiff alleges subsequent to the settlement approval). The few Plaintiffs who will agree to a general release will receive any additional payment in consideration for the release.

Second, the Settlement Agreement also does not contain a traditional confidentiality provision. *See In re Chickie's*, 2014 WL 911718, at *3. Rather, the Settlement Agreement only precludes Plaintiffs' Counsel and Plaintiffs from certain publicity regarding the lawsuit and settlement. Settlement Agreement at ¶ 7. Third Circuit courts have approved publicity clauses such as this. *Id.* at *3 (approving publicity clause that "only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media"); *Ogunlana v. Atlantic Diagnostic Laboratories LLC*, 2020 WL 1531846, at *5 (E.D. Penn. March 31, 2020).

### D. The Service/General Release Payments Should Be Approved

Plaintiffs request Service/General Release Payments, including $4,000 to the Named Plaintiff, and $500 to Opt-in Plaintiffs Jasmine Berdeguez, Kierrah Giles, Chandler Prisk,

13

Giovanni Robinson, Brittany Reed, Kiara Sullivan, Ashley Turientine, Kyishawn Kitt, and Angionette Ricketts. The Service/General Release Payment are consideration for these recipients' execution of a General Release. A general release is valid consideration for such payments. *Mikityuk v. Cision US Inc.*, 2022 U.S. Dist. LEXIS 135405, at *18 (S.D.N.Y. July 29, 2022) (approving extra payment to FLSA plaintiff as consideration for general release) (collecting cases); *Dozier v. Dbi Servs.*, 2021 U.S. Dist. LEXIS 245359, at *26 (M.D. Fla. Dec. 22, 2021) (approving extra payment to FLSA plaintiff because "general releases 'can be permissible' where 'plaintiffs receive adequate compensation in addition to the entitled benefits under the FLSA'") (citations omitted); *Mullins v. Data Mgmt. Co.*, 2021 U.S. Dist. LEXIS 124891, at *20 (S.D. Oh. June 21, 2021) (same); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 673 (D. Md. 2013) (same); *Edelen v. Am. Residential Servs., LLC*, 2013 U.S. Dist. LEXIS 102373, at *47 (D. Md. July 22, 2013) (same).

In addition, the Service/General Release Payments are intended to, and do, recognize the additional services which those plaintiffs provided to benefit the collective as a whole. *See* Palitz Decl., ¶ 19. District courts in the Third Circuit routinely approve Service/General Release Payments greater than the awards requested here. *See, e.g.*, *Mejia v. KVK-Tech, Inc.*, 2020 WL 5292074 at *10-11 (E.D. Pa. Sept. 4, 2020) (approving award of $5,000); *Kapolka v Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *13 (W.D. Pa. Oct. 22, 2019) (collecting cases from district courts within the Third Circuit and noting awards ranging from $5,000 to $12,500); *Moore v. Comcast Corp.*, 2011 WL 238821, at *6 (E.D. Pa. Jan. 24, 2011) (approving an award in the amount of $10,000).

Such awards compensate the recipients for the time and effort expended in assisting the prosecution of the litigation and the risks incurred by becoming a litigant. *See Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 333 n. 65 (3d Cir. 2011) ("The purpose of [service] payments is

to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."); *see also Kapolka,* 2019 WL 5394751, at *13 (service awards "reward the public service of contributing to the enforcement of mandatory laws").

Here, Plaintiffs' counsel contends that the Service/General Release Payment recipients undertook reputational and personal risks. Palitz Decl., ¶ 19; *see Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *17 (E.D. Pa. Apr. 6, 2020) (named plaintiffs take significant risk by representing the interests of their fellow employees); *Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers learning they filed a class action lawsuit against their prior employer). The Plaintiffs receiving Service/General Release Payments also provided information supporting their claims and the claims of the Collective Members to Plaintiffs' Counsel, submitted declarations in support of their claims, and some assisted counsel in preparation of the mediation. Palitz Decl., ¶ 19. Courts in this Circuit have approved additional payments for similar activities. *See, e.g., Fein v. Ditech Fin., LLC*, 2017 WL 4284116, at *11 (E.D. Pa. Sept. 27, 2017) (awarding service payments where the plaintiffs "provided documents to class counsel, provided information concerning their experiences and Defendant's practices, supplied testimony and documents critical to investigation of the Class Members' claims, and made themselves available for the mediation").

### E. The Court Should Approve the Payment of Attorneys' Fees and Expenses as Just and Reasonable

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b). In FLSA cases, while both the "lodestar" formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees, in fee shifting cases such as this, the lodestar is the proper method. *See Gelis v. BMW of N. Am., LLC*, 49 F.4th

15

\#

371 (3d Cir. Sept. 9, 2022); *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 177 (3d Cir. 2001) (affirming that using "lodestar" formula is appropriate); *see also Souryavong v. Lackwawanna Cty.*, 872 F.3d 122 (3d Cir. 2017) (affirming district court's detailed lodestar analysis of requested attorney's fees); *Karali v. Branch Banking & Trust Co.*, 2020 WL 7227204, at *2 (D.N.J. Feb. 3, 2020) (approving FLSA collective action settlement and noting that "settlements involving fee-shifting statutes without a common fund, such as this one, the Third Circuit prefers the lodestar method"); *Stickel v. SMP Svcs, LLC*, 2016 WL 827126, at *4 (M.D. Pa. Mar. 1, 2016) (discussing that statutory fee-shifting approach of FLSA suggests lodestar approach) (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 n.2 (4th Cir. 1992)); *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009)). As the Third Circuit explained in *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1996):

> Courts generally regard the lodestar method . . . as the appropriate method in statutory fee shifting cases. Because the lodestar award is de-coupled from the class legislatively identified by the statutory fee shifting provision, an adequate fee irrespective of the monetary value of the final relief achieved for the class. 55 F.3d at 821. To determine what is reasonable under the lodestar method "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner,* 260 F.3d at 177.

Importantly, where, as here, the attorneys' fees and costs were negotiated separately after the unpaid wages were settled, the Court need not even review the fee award. *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019) ("The statute speaks of allowing fees 'in addition to any judgment awarded,' treating the merits of an FLSA claim and the attorney fees as distinct . . . As a result, any court judgment on the settled merits would necessarily be separate from any court review of the settled attorney fees . . . Thus, regardless of whether we read the statute as requiring approval for FLSA settlements, we do not read it as requiring approval of settled attorney fees."); *Horton v. Right Turn Supply, LLC*, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (based upon the statutory language of the FLSA, "a settlement of attorneys' fees that is separate from a

settlement of an FLSA claim is not subject to review."); *Joseph v. Caesar's Entm't Corp.*, 2012 U.S. Dist. LEXIS 200741, at *7-8 (D.N.J. July 23, 2012) ("If the parties submit a proposed FLSA settlement and represent 'that the plaintiff's attorneys' fees was agreed upon separately and without regard to the amount paid to the plaintiff,' then 'the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.'" (citations omitted)). As one court reasoned:

> As a threshold matter, the recovery of attorneys' fees and costs in this case does not create a conflict of interest that could affect Plaintiffs' ultimate recovery. The attorneys' fees and costs were negotiated separately from the substantive terms of the Settlement Agreement and do not 'come out of' or 'decrease' the payment to Opt-In Plaintiffs.

*Alvarez v. BI Inc.*, 2020 U.S. Dist. LEXIS 60656, at *19, n. 7 (E.D. Pa. Apr. 6, 2020).

In the instant case, Plaintiffs' Counsel's requested attorneys' fees and costs of $151,164.00. This fee was negotiated separate and apart from the settlement of Plaintiffs' unpaid wages and after Plaintiffs' claims were negotiated and settled. *See* Palitz Decl., ¶ 20. Thus, the award of fees and costs does not diminish the Plaintiffs' recovery of unpaid wages. Accordingly, this Court need not review the attorneys' fees and cost request. *See supra*.

Even if the Court were to review it, Plaintiffs' Counsel's fee request complies with the lodestar method approved by district courts in the Third Circuit. Specifically, Plaintiffs' Counsel has, between the two firms, recorded a lodestar of $179,727.50, as of May 11, 2023 (and continuing to accrue) and approximately $26,350 in costs for a total of $206,077.50. *See* Palitz Decl., ¶¶ 21-22. The fees request represents a discount of more than $54,913.50,[7] and yields a lodestar

---

[7] Plaintiffs' Counsel seek fees and costs of $151,164.00. $151,164.00 minus their out-of-pocket costs incurred, which is $26,350.00, results in a recovery of $124,814.00 (also $151,164/$179,727.50 = .84). Accordingly, Plaintiffs' Counsel's lodestar of $179,727.50 minus the $124,814.00 they will recover under the Settlement Agreement equals a reduction of $54,913.50. Also, simply, the total fees and costs incurred $206,077.50 minus the fees and costs sought, $151,164.00, equals a reduction of $54,913.50.

\#

multiplier of .84. *Id*. at ¶ 23. A multiplier of less than one confirms the reasonableness of the award. *See Karali*, 2020 WL 7227204, at *2 (approving fee awarded on lodestar basis, yielding multiplier of 0.439, noting this ratio "weighs in favor of approval"); *see also Alvarez v. BI Inc.*, 2020 WL 1694294, at * 8 (E.D. Pa. Apr. 6, 2020) (with lodestar crosscheck, noting that multiplier of 0.58 confirms requested award is fair and reasonable); *Waltz v. Aveda Trans. and Energy Svcs, Inc.*, 2017 WL 2907217, at *5 (M.D. Pa. Jul. 7, 2017) (using lodestar cross-check, finding multiplier of 0.54 justifies award).

The result demonstrates the quality of counsels' work in this adversarial litigation. Of course, the Court, which presided over the proceedings, is able to assess for itself the quality and extent of Counsel's efforts as well.

Finally, Plaintiffs' Counsel requests includes reimbursement of their out-of-pocket costs and expenses. Plaintiffs' counsel have incurred $20,350.00 in costs and will incur an additional amount of costs in the amount of approximately $6,000.00 for Settlement Administration for a total of $26,350.00 in costs. Palitz Decl., ¶ 22. Courts in the Third Circuit routinely approve reimbursement of such costs and expenses. *See, e.g. Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Penn. Nov. 4, 2014) (approving complaint filing and mediation costs); *In re Safety Components, Inc*. Sec. Litig., 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (approving costs for photocopies, telephone and fax charges, postage and express mail charges, and legal research).

Accordingly, while Plaintiffs' Counsel have a lodestar of $179,727.50 and costs of approximately $26,350.00 totaling $206,077.50—they have reduced their fees and costs to $151,164.00 to bring closure to this action.

18

\#

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request, without opposition, that the Court grant their Motion for Approval and enter the proposed Order filed herewith as Exhibit 3 (1) granting approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the payment of Service/General Release Payments as set forth in the Settlement Agreement; (3) awarding Plaintiffs' Counsel their requested attorneys' fees and costs as set forth in the Settlement Agreement; and (4) dismissing the case with prejudice.

Of Counsel:

Gregory I. Shavitz
SHAVITZ LAW GROUP, P.A.
951 Yamato Road, Suite 285
Boca Raton, FL 33431
Tel: (561) 447-8888
gshavitz@shavitzlaw.com

Michael Palitz
SHAVITZ LAW GROUP, P.A.
447 Madison Avenue, 6th Floor
New York, NY 10022
Tel: (561) 447-8888
mpalitz@shavitzlaw.com

Dated: May 19, 2023

CONNOLLY GALLAGHER LLP

/s/ Matthew F. Boyer
Matthew F. Boyer (DE Bar No. 2564)
Aaron M. Shapiro (DE Bar No. 3859)
Lauren P. DeLuca (DE Bar No. 6024)
1201 Market Street, 20th Floor
Wilmington, DE 19801
(302) 884-6585
mboyer@connollygallagher.com
ashapiro@connollygallagher.com
ldeluca@connollygallagher.com

*Attorneys for Plaintiff and the Putative Collective and Class*

#