# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| PANDORIA SHIRD, on behalf of herself and all similarly situated persons,  )<br>)<br>Plaintiffs,  )<br>v.  )<br>)<br>DUKE ENERGY CORPORATION,  )<br>)<br>Defendant.  ) | C.A. No. 1:22-cv-00999-CFC |

## PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR SETTLEMENT APPROVAL

Plaintiff Pandoria Shird, through Counsel, submits this supplemental memorandum of law and authority pursuant to the Court's directions at the July 12, 2023 settlement approval hearing.

CONNOLLY GALLAGHER LLP

*s/Matthew F. Boyer*
Matthew F. Boyer (DE Bar No. 2564)
Aaron M. Shapiro (DE Bar No. 3659)
Lauren P. DeLuca (DE Bar No. 6024)
1201 Market Street, 20th Floor
Wilmington, DE 19801
(302) 884-6585
mboyer@connollygallagher.com
ashapiro@connollygallagher.com
ldeluca@connollygallagher.com

Date: August 1, 2023

## INTRODUCTION

At the conclusion of the July 12, 2023 hearing for the Court's review of the unopposed Motion for Settlement Approval (D.I. 53), submitted by Plaintiffs' counsel, the Court ordered Plaintiffs' counsel to submit supplemental argument by August 2, 2023, on the question of the appropriateness of the negotiated amount of fees and costs to be paid to Plaintiffs' counsel. This is Plaintiffs' memorandum of law and authority in support of the negotiated fee and cost provisions of the settlement, submitted in response to the Court's order.

## OVERVIEW

At the July 12, 2023 hearing, the Court indicated that the proposed settlement for the Plaintiffs was fair and reasonable. However, the Court had concerns regarding Plaintiffs' Counsel's fees and costs to be paid by Defendant insofar as they would exceed the Plaintiffs' settlement amount. Plaintiffs' Counsel welcomes the Court's inquiry and appreciates the opportunity to address the Court's concerns and to explain why the arm's length, separately-negotiated settlement of Plaintiffs' Counsel's fees and costs is proper pursuant to the fee-shifting provisions of the Fair Labor Standards Act ("FLSA"). 29 U.S.C. § 216(b).

Given the nature of FLSA collective actions that involve small individual amounts of wages owed, it is not uncommon for attorney's fees to exceed the amount paid to the plaintiffs. In FLSA cases such as this, plaintiffs' attorneys generally represent their clients on a contingency basis because (1) their clients cannot afford to pay attorneys' fees and costs, (2) the amount of plaintiffs' damages typically are much lower than the fees and costs required to litigate the claims, and (3) the FLSA provides an incentive for attorneys to vindicate employees' right to be paid fair wages through a fee-shifting statutory provision for attorneys willing to take the risk to represent them, without regard to whether such fees – which depend

#

to a large extent on the factors beyond counsel's control, such as defendants' counsel's strategy – might exceed the amount of unpaid wages owed to the plaintiffs.

For workers to avail themselves of the protective and remedial benefits of the FLSA, and to discourage employers from thinking they may shortchange workers by small amounts with impunity, the statute encourages attorneys to represent employees on a contingency basis through the fee-shifting provision in 29 U.S.C. § 216(b). If attorneys are not fairly compensated for their work on successful prosecution of FLSA collective actions, employees will not be able to obtain representation to handle their claims. *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (requiring proportionality between settled FLSA wage claims and settled attorneys' fees would be "inconsistent with the remedial goals of the FLSA," which is a "uniquely protective statute.").

For these reasons, the amount of wages obtained in settlement does not function to cap the fees awarded or negotiated as a part of that settlement. Indeed, Congress contemplated that fees for the prosecution of an FLSA collective action will *exceed* the wages obtained on behalf of the workers. *See also Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 169 (2d Cir. 2011) ("Especially for claims where the financial recovery is likely to be small, calculating attorneys' fees as a proportion of damages runs directly contrary to the purpose of fee-shifting statutes: assuring that civil rights claims of modest cash value can attract competent Counsel. The whole purpose of fee-shifting statutes is to generate attorneys' fees that are *disproportionate* to the plaintiff's recovery.") (emphasis in original). Thus, it is not uncommon in FLSA collective and class actions for attorneys' fees to exceed the amount of back wages and liquidated damages paid to the plaintiffs. *Id.*; *see also United Auto. Workers Local 259 Soc. Sec. Dep't v. Metro Auto Ctr.*, 501 F.3d 283, 294 (3d Cir. 2007) (explaining, in the context of ERISA, which has a fee-shifting provision similar to the FLSA, "[n]othing in the text of

3

#

[the statute] suggests that to be 'reasonable,' fees must be proportional"). Other courts have similarly recognized that there is nothing untoward about attorney's fees being higher than the settlement amount for plaintiffs in a disputed unpaid wage litigation. As one court stated:

> Nor can we operate on a presumption that the plaintiff's bar in FLSA cases is out to enrich itself through unreasonable fees at the expense of their clients . . . . The fact is that most of the litigation to protect the vulnerable under remedial legislation is attorney-driven as a result of fee-shifting provisions, but it does not follow that there is a pervasive problem of attorneys favoring themselves at their clients' expense that is peculiar to the FLSA.

*Barnhill v. Stark Estate*, 2015 U.S. Dist. LEXIS 125115, at *6 (E.D.N.Y. Sept. 17, 2015).

As Plaintiffs' Counsel noted at the hearing, this settlement is not a common fund settlement whereby Counsel typically requests a percentage of the settlement fund as fees. Rather, this is a settlement pursuant to the FLSA, in which the fees and costs were settled separately per the FLSA's fee-shifting provisions in 29 U.S.C. § 216(b) after the parties negotiated the settlement amount for the FLSA collective. The settlement amount for each member of the collective represents approximately 14 minutes of unpaid time per week, over 19,362 weeks. Declaration of Michael Palitz, Esq. ("Palitz Decl.") at ¶ 6. The evidence that the parties exchanged and evaluated to reach this settlement shows that this is the maximum amount of potential unpaid wage damages at issue. *Id.* Because the settlement of Plaintiffs' Counsel's fees and costs was negotiated separately after the parties had settled the claims of the FLSA collective, the amount of fees and costs did not diminish the settlement amount for the Plaintiffs. In this context, the Court does not review the separately negotiated fees for fairness because there are no concerns that "Plaintiffs claims were compromised in any way to benefit Counsel, nor can any conflict of interest by Counsel be identified under this scenario." *Mejia v. Commercial Driver's License Sch.*, 2021 U.S. Dist. LEXIS 26524, at *12-13 (S.D. Fla. Feb. 9, 2021).[1]

---

[1] Nonetheless, even if the Court deemed it appropriate to review the fees for fairness, the amounts

4

#

This settlement is a positive result for the Plaintiffs given the challenges of continued litigation against a vigorously-represented Defendant, including, among other things, (1) Defendant's policies to pay for all time worked; (2) the lack of electronic evidence (*i.e.*, log in and log out times) to demonstrate precisely when Plaintiffs began and stopped worked and whether any work occurred outside of the time reported on their time sheets; (3) the difficulty of proving whether Defendant knew or should have known of the unpaid time worked; and (4) whether the unpaid work is compensable. Despite such challenges, the parties worked together to assess the length of time it took Plaintiffs to log in and out, and Defendant shared data to allow Plaintiffs to determine damages. In addition, the settlement was achieved through a negotiated process with a former federal Magistrate Judge – the Hon. Thomas J. Rueter. Thus, the settlement is a fair result for the Plaintiffs and should be approved as proposed, given the reasonable lodestar rate and the amount of work required by Counsel to achieve this result.

Another critical factor is the quality of the defense and the aggressive defense strategy. Defendant is represented by one of the best employment defense firms in the country – Morgan Lewis & Bockius LLP – and by Counsel who is ranked as one of the "Best Lawyers in America" and ranked by Chambers USA. https://www.morganlewis.com/bios/mpuma. From the outset, Defendant aggressively defended this matter:

1. Defendant refused to engage in early settlement discussions pre-suit and Plaintiff had to file the Complaint. ECF No. 1.

2. Plaintiff filed a motion for conditional certification supported by significant evidence including 10 declarations from collective action members (ECF Nos. 9, 10, 19, 24, 29, 30), which Defendant initially opposed.

3. The parties addressed discovery issues relating to the conditional certification motion. ECF Nos. 14-15.

---

negotiated are both fair and reasonable as they are significantly less than Plaintiffs' Counsel's lodestar, and the effective hourly rate is reasonable and likely significantly less than the hourly rate Defendant paid its Counsel. *See infra*.

#

4. Defendant filed a motion to transfer the case, ECF No. 17, further complicating the prosecution of this case and requiring additional research and meet and confer efforts.

5. After numerous conferrals, the parties reached an agreement whereby Defendant agreed to conditional certification and Plaintiff agreed to transfer the case. ECF No. 31.

6. Following the agreement on conditional certification, the Parties agreed to mediate this matter and stay any transfer until after mediation. ECF No. 33.

7. The Parties negotiated the notice and consent-to-join form and administration process to send notice to the FLSA collective members. ECF No. 33.

8. In preparation for mediation, the parties exchanged data and other evidence to support their claims and defenses. Plaintiffs' Counsel interviewed numerous opt-in plaintiffs regarding their claims to prepare for mediation and calculate potential damages.

9. Plaintiffs' Counsel prepared a detailed mediation statement for the mediator – former federal magistrate judge Hon. Thomas J. Reuter.

10. The Parties mediated this matter during a full-day session with Hon. Thomas J. Reuter.

11. Plaintiffs' Counsel prepared settlement documents and motion papers.

In short, Defendant's robust litigation tactics and resistance to early settlement caused Plaintiffs to incur significant fees in response. As the Supreme Court has noted, when a defendant litigates "tenaciously" and resists numerous overtures by plaintiffs regarding settlement, there are no grounds to question "the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580-81 n.11 (1985) (plurality opinion) (internal citation and quotation marks omitted).

As a result of this contentious litigation and the work required to achieve this settlement Plaintiffs' Counsel spent 384.1 hours litigating this case and incurred $199,669.76 in lodestar fees through July 11, 2023. Palitz Decl. ¶ 11. Unlike Defendant's Counsel, Plaintiffs' Counsel

#

expended all this time and effort without any payment and no guarantee that they ever would be paid if Defendant prevailed in this case. Palitz Decl. ¶ 8.

Plaintiffs' Counsel's fee and cost settlement of $151,164.00 – yielding an effective hourly rate of $393.55 before deducting costs – is reasonable under these circumstances of a contentious, hard-fought litigation whereby the Plaintiffs are receiving a fair settlement and the Parties separately agreed to an attorneys' fee and cost amount for Plaintiffs' Counsel per the fee-shifting provisions of the FLSA. In fact, the negotiated fees represent a .75% *negative* multiplier from Plaintiffs' Counsel's lodestar, which further supports the reasonableness of the fees. *Estorga v. Santa Clara Valley Transp. Auth.*, 2020 U.S. Dist. LEXIS 233602, at *23-24 (N.D. Cal. Dec. 11, 2020).

For these reasons, Plaintiffs respectfully request that the Court approve this settlement.

## ARGUMENT

**I.  Judicial Approval of FLSA Settlements Does Not Extend to Separately Negotiated Attorneys' Fees.**

At the Court's request, Plaintiffs' Counsel will first address the authority, alluded to at oral argument, supporting the proposition that, while Court approval of the Plaintiffs' FLSA settlement is necessary and the Court has authority to review and approve that settlement, "any authority for judicial approval of FLSA settlements in 29 U.S.C. § 216 does not extend to review of settled attorney fees[.]" *Barbee v. Big River Steel, LLC*, 927 F.3d 1024, 1027 (8th Cir. 2019); *Penska v. T.S. Dudley Land Co.*, 2021 U.S. Dist. LEXIS 34219, at *5, n.1 (W.D. Pa. Feb. 24, 2021) ("On review of the settlement agreement, the Parties negotiated the attorneys' fee component separately. Accordingly, the Court agrees with the Parties that it lacks authority under the FLSA to approve the attorneys' fee component."). "The statute speaks of allowing attorneys' fees 'in addition to any judgment awarded,' treating the merits

of an FLSA claim and the attorney fees as distinct." *Barbee*, 927 F.3d at 1027 (quoting 29 U.S.C. § 216(b)). "As a result, any court judgment on the settled merits would necessarily be separate from any court review of the settled attorney fees." *Barbee*, 927 F.3d at 1027. "This reading of the statute is consistent with the rationale of the circuits that require approval for all FLSA settlements because such approval serves the 'FLSA's underlying purpose' of protecting workers' rights." *Id.*

"When the Parties negotiate the reasonable fee amount separately and without regard to the plaintiff's FLSA claim, the amount the employer pays to the employees' counsel has no bearing on whether the employer has adequately paid its employees in a settlement." *Barbee*, 927 F.3d at 1027. "The Parties were entitled to settle the attorney fee issue, and no law gave the district court authority to interfere with that unconditional right." *Id*. In approving FLSA settlements, district courts do not have authority to review separately negotiated attorney's fees. *Id.*; *see also Penska*, 2021 U.S. Dist. LEXIS 34219, at *5, n.1 ("On review of the settlement agreement, the Parties negotiated the attorneys' fee component separately. Accordingly, the Court agrees with the Parties that it lacks authority under the FLSA to approve the attorneys' fee component."); *Horton v. Right Turn Supply, LLC*, 455 F. Supp. 3d 202, 206 (W.D. Pa. 2020) (court does not have "authority to review the attorneys' fees component" of the settlement which was separately negotiated); *see also Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("Ideally, of course, litigants will settle the amount of a fee.").

Regarding the separate negotiations of Plaintiffs' attorneys' fees and costs, Defendant was fully motivated to negotiate a reduced fee. In fact, Defendant agreed to pay Plaintiffs' Counsel only a *portion* of their incurred and to be incurred fees and costs, such that the negotiated attorneys' fees represent a downward departure from Plaintiffs' Counsel's lodestar. Nonetheless, because this is not a common fund settlement whereby Plaintiffs' Counsel is

8

#

seeking a percentage of a common fund, the Parties were entitled to settle Plaintiffs' Counsel's fees and costs. Thus, while the FLSA authorizes the Court to assess the fairness of Plaintiffs' FLSA settlement, it does not prescribe the Court to review the separately negotiated fees that were the result of arms-length negotiations between the Parties' Counsel. *See supra*.

**II.     If the Court Determines that It Has Authority to Review and Approve Separately Negotiated Attorneys' Fees in FLSA Settlements, the Court Should Approve Plaintiffs' Attorneys' Fees and Costs as Fair and Reasonable.**

   **A.     The FLSA's Remedial Purpose and Fee-Shifting Provisions Incentivize Counsel to Bring Unpaid Wage Claims on Behalf of Employees**

Congress enacted the FLSA with the goal of "protect[ing] all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U. S. 728, 739 (1981); *see also* 29 U.S.C. § 202(a). "The broad remedial goal of the statute should be enforced to the full extent of its terms." *Hoffmann-La Roche Inc. v. Sperling*, 493 U. S. 165, 173 (1989). Congress included a fee-shifting provision in the FLSA so that competent Counsel will take on cases for employees who could not otherwise afford to pay attorneys and/or where the costs to litigate exceed the monetary value of FLSA unpaid wage claims. *Millea*, 658 F.3d at 169. Given the relatively modest unpaid wage claims at issue, the FLSA's fee-shifting provision is especially important because otherwise counsel may not be inclined to assume the risks of litigation against well-represented employers, as their fees and costs would far exceed potential recovery for the plaintiffs, and employers would be tempted to believe they can short-change workers in small amounts with impunity. *See, e.g., Magill v. DIRECTV, LLC*, 2017 U.S. Dist. LEXIS 220429, at *13 (C.D. Cal. June 23, 2017) ("Often FLSA lawsuits involve relatively small damage amounts compared to the complexity of issues and work of the attorneys. This is precisely why Congress included the fee-shifting provision—to incentivize attorneys to take the case.") (citations omitted).

\#

**B.  Attorneys' Fees Are Typically Disproportionate to the Damages in FLSA Cases**

At the July 12, 2023 hearing, the Court expressed concern with Plaintiffs' Counsel's settled attorneys' fees and costs because they exceeded the settlement amount for the Plaintiffs. However, plaintiffs' attorneys' fees often exceed the value of the unpaid wage claims in FLSA and other fee-shifting statutory cases, and courts have recognized that it is contrary to the remedial purpose of the FLSA to penalize attorneys when that occurs. *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) (internal quotation and citation omitted); ("[b]y implementing a percentage cap on attorneys' fees in FLSA actions, district courts impede Congress's goals by discouraging plaintiffs' attorneys from taking on 'run of the mill' FLSA cases where the potential damages are low and the risk of protracted litigation high.  Fee awards in wage and hour cases should encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel . . . . Without fee-shifting provisions providing compensation for counsel, employees like [plaintiff] would be left with little legal recourse.").  This is the law in the Third Circuit as well.  *See Metro Auto Ctr.*, 501 F.3d at 293 (rejecting rule of proportionality of fees and damages in ERISA case, which has similar fee-shifting provision to the FLSA); *Washington v. Philadelphia County Court of Common Pleas*, 89 F.3d 1031 (3d Cir. 1996) ("We hold that the court's consideration of the proportionality of the damages to the fee award was legal error."); *Cox v. Elite Energy LLC*, 2011 U.S. Dist. LEXIS 107601, at *20 n. 12 (D.N.J. Sept. 21, 2021) ("FLSA claims may involve relatively small monetary awards, and the Court should not reduce a fee award solely on the basis that the attorney's fees are disproportionate to the damage award.").

FLSA cases often settle where the attorneys' fees and costs exceed the plaintiffs' settlement amount because of the amount of time and costs necessary to litigate such cases.

#

*E.g.*, *Archer v. Defenders, Inc.*, 2022 U.S. Dist. LEXIS 185317, at *3 (D. Del. Oct. 11, 2022) (approving FLSA settlement of $1,600,000 to FLSA plaintiffs and $3,400,000 in fees and costs) (see No. 1:18-cv-00470 (D. Del.) at ECF No. 336 at p. 5); *Bernardez v. Firstsource Sols. USA, LLC*, 2022 U.S. Dist. LEXIS 71531, at *18 (W.D. Ky. Apr. 19, 2022) ($150,000 settlement for plaintiffs and FLSA opt-ins and $320,000 settlement for plaintiffs' fees and costs); *Crankshaw v. NCL Corp.*, 2018 U.S. Dist. LEXIS 42788 (S.D. Fla. Mar. 14, 2018) ($80,250 settlement for plaintiffs plus service awards; fees and costs settled for $305,480); *Peterson v. Nelnet Diversified Sols. LLC*, 2022 U.S. Dist. LEXIS 24276, at *11, 21 (D. Colo. Feb. 10, 2022) (similar call center settlement approving $87,492.48 settlement for plaintiff and FLSA opt-ins and finding $1,600,000 for attorneys' fees and costs to be reasonable "in light of the issues presented in this action and the time and effort spent adjudicating this case"); *Pugliese v. GEICO*, No. 1:21-cv-11629 (D. Mass.) (ECF Nos. 100, 101) (January 10, 2023 Electronic Order approving FLSA settlement negotiated by a Massachusetts federal Magistrate Judge with $96,957.82 allocated to the plaintiffs and plaintiffs' fees and costs of $130,542.18).

### III. Plaintiffs' Counsel and Defendant Agreed to a Reasonable Fee and Cost Payment for Significant Work Performed

Plaintiffs' Counsel herein represented the Plaintiffs on a contingency basis and received no payment for fees and costs. Palitz Decl. ¶ 8. If this case was not successful, Plaintiffs' Counsel bore all of the risks and would not have received any payment for their time or reimbursement for their costs. *Id.* Plaintiffs' Counsel's work on major tasks in this matter is summarized at page 5 *supra* and copies of Plaintiffs' Counsel's time records are attached as Exhibit A to the Palitz Decl. and Exhibit A to the Shapiro Decl.

To resolve Plaintiffs' Counsel's fee and cost claim per 29 U.S.C. § 216(b), Defendant agreed to pay Plaintiffs' Counsel $151,164.00 in fees and costs. ECF No. 53-1 at p.7. Prior to

the July 12, 2023 settlement conference, Plaintiffs' Counsel's fees and costs totaled $199,669.76, which reflects 384.1 hours litigating this case. Palitz Decl. at ¶ 11 and Exhibit A to Palitz Decl. and Exhibit A to Shapiro Decl. (Plaintiffs' Counsel's time records). If the Court were to divide the entire fee and cost settlement amount of $151,164 (without deducting costs) by the total hours (384.1) spent litigating the case as of July 11, 2023, Plaintiffs' Counsel's effective hourly rate is $393.55. This rate is very reasonable for Plaintiffs' Counsel who have substantial experience litigating FLSA cases and have had higher rates approved elsewhere. Palitz Decl. at ¶¶ 14-20 (Christine Duignan, Esq. has 32 years of experience; Gregg Shavitz, Esq. has 24 years of experience; Loren Donnell, Esq. has 18 years of experience; Michael Palitz, Esq. has 13 years of experience); Declaration of Aaron M. Shapiro, Esq. In Support of Unopposed Motion for Settlement Approval ("Shapiro Decl.") at ¶¶ 16-18 (Aaron Shapiro, Esq. has 28 years of experience; Matthew Boyer, Esq. has 37 years of experience; Lauren DeLuca, Esq. has 9 years of experience); *Poblano v. Russell Cellular, Inc.*, 2022 U.S. Dist. LEXIS 117114, at *8 (M.D. Fla. June 14, 2022) (approving $600 hourly rate of Gregg Shavitz, Esq.); *Brown v. Barnes & Noble, Inc.*, 2020 U.S. Dist. LEXIS 85442, at *10 (S.D.N.Y. May 14, 2020) (2020 case approving hourly rates of $650 for Gregg Shavitz, Esq. and $500 for Michael Palitz, Esq.).

The effective hourly rate is also lower than the Community Legal Services, Inc.'s fee schedule which Delaware courts have found to be an "appropriate benchmark for establishing hourly rates." *Rayna P. v. Campus Cmty. Sch.*, 390 F. Supp. 3d 556, 564-65 (D. Del. 2019); Community Legal Services, Inc.'s Fee Schedule, *available at* http://clsphila.org/about-cls/attorney-fees (last visited August 1, 2023). That fee schedule (which does not account for an upward adjustment for contingency fee cases which would be proper here) provides for hourly rates as follows:

#

| | |
|---|---|
| Attorneys 6-10 Years of Experience | $320-$415 |
| Attorneys 11-15 Years of Experience | $420-$525 |
| Attorneys 16-20 Years of Experience | $535-$625 |
| Attorneys 21-25 Years of Experience | $630-$715 |

*Id.* Plaintiffs' Counsel's experience (see Palitz Decl. at ¶¶ 14-20 and Shapiro Decl. at ¶¶ 5, 16-18) could justify rates higher than the effective hourly rate paid through this settlement. Finally, when comparing Plaintiffs' Counsel's total lodestar of $199,669.76 (as of July 11, 2023) to the settlement fee and cost amount of $151,164, there is a negative lodestar multiplier of 0.75, further highlighting the reasonableness of the fee and cost settlement. *Estorga,* 2020 U.S. Dist. LEXIS 233602, at *23-24.

Plaintiffs' Counsel agreed to accept less than their lodestar amount and Defendant agreed to pay such amount to avoid a separate litigation over fees and costs which would delay this matter. "In statutory fee cases, it is well settled in this circuit that in calculating the 'lodestar,' or initial fee calculation requiring the court to multiply a reasonable hourly fee by the reasonable amount of hours worked, the district court may not award less in fees than requested unless the opposing party makes specific objections to the fee request." *United States v. Eleven Vehicles*, 200 F.3d 203, 211 (3d Cir. 2000). Here, Defendant agreed to the settlement amount for Plaintiffs' Counsel and does not object to Plaintiffs' Counsel's lodestar total. Therefore, the fee and cost settlement amount is appropriate.[2]

---

[2] In addition, it is worth noting that Plaintiffs' Counsel's fees and costs have and will continue to increase after the settlement. Plaintiffs' Counsel will confer with their clients regarding the settlement, tax forms, and assist the administrator with the settlement administration, which will continue until tax time in 2024. Plaintiffs' Counsel will not receive any additional

## CONCLUSION

The FLSA was enacted to protect workers and encourage attorneys to take on relatively modest unpaid wage claims via the fee-shifting provision in 29 U.S.C. § 216(b). These cases often result in attorneys' fees and costs which exceed the recovery for the plaintiff employees. In a mediation presided over by a retired federal magistrate judge, Plaintiffs' Counsel appropriately negotiated and agreed to reduce their attorneys' fees and costs downward by approximately 25 percent to reach a settlement with Defendant to avoid prolonging this matter further and running the risk that Plaintiffs would recover nothing instead of the full amount of unpaid wages to which they were entitled. The Parties agree the settlement is fair and reasonable, and Plaintiffs respectfully request that the Court approve it as justified for the reasons set forth above.

|  |  |
|---|---|
| Of Counsel: | CONNOLLY GALLAGHER LLP |
|  | *s/Matthew F. Boyer* |
| Gregory I. Shavitz | Matthew F. Boyer (DE Bar No. 2564) |
| SHAVITZ LAW GROUP, P.A. | Aaron M. Shapiro (DE Bar No. 3659) |
| 951 Yamato Road, Suite 285 | Lauren P. DeLuca (DE Bar No. 6024) |
| Boca Raton, FL 33431 | 1201 Market Street, 20th Floor |
| Tel: (561) 447-8888 | Wilmington, DE 19801 |
| gshavitz@shavitzlaw.com | (302) 884-6585 |
|  | mboyer@connollygallagher.com |
| Michael Palitz | ashapiro@connollygallagher.com |
| SHAVITZ LAW GROUP, P.A. | ldeluca@connollygallagher.com |
| 447 Madison Avenue, 6th Floor |  |
| New York, NY 10022 | *Attorneys for Plaintiff and the Putative* |
| Tel: (561) 447-8888 | *Collective and Class* |
| mpalitz@shavitzlaw.com |  |

Dated: August 1, 2023

---

payment for this time, which will further reduce their effective hourly rate and the lodestar multiplier.

#